UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
 :
CLAUDIA QUINBY,
 :
               Plaintiff,      04 Civ. 7406 (WHP)
 :
              -against-      MEMORANDUM AND ORDER
 :
WESTLB AG,
 :
             Defendant.
 :
------------------------------X

WILLIAM H. PAULEY III, District Judge:

        Plaintiff Claudia Quinby brings this employment discrimination action against her former employer, Defendant WestLB AG ("Defendant" or "WestLB"), asserting violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1983; the New York State Human Rights Law (the "HRL"), N.Y. Exec. Law § 290 et seq.; the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq.; and § 510 of the Employee Retirement and Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1140. On November 8, 2007, a jury found that Defendant had not discriminated against Plaintiff on the basis of her gender, but had retaliated against her by terminating her employment and denying her bonus compensation in 2003 and 2004, and that it had terminated her employment in 2004 to prevent her pension from vesting. The jury awarded plaintiff $747,000 in back pay, $500,000 in compensatory damages, and $1.3 million in punitive damages, but declined to award any front pay.

        Defendant moves for judgment as a matter of law pursuant to Fed. R. Civ. P.

50(b) to set aside the punitive damages award; for remittitur of the punitive, compensatory and bonus damages awards, or for a new trial relating to these awards pursuant to Fed. R. Civ. P. 59(a) and (e). Plaintiff moves for reinstatement and pre- and post-judgment interest. For the following reasons, Defendant's motions are granted in part and denied in part, and Plaintiff's motions are granted in part and denied in part.

## DISCUSSION

I. <u>Judgment as a Matter of Law</u>

A motion for judgment as a matter of law should be granted where "there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or . . . there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [people] could not arrive at a verdict against [it]." <u>Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.</u>, 136 F.3d 276, 289 (2d Cir. 1998). In considering a motion for judgment as a matter of law, courts must

> consider the evidence in the light most favorable to the party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence. The court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury. In making its evaluation, the court should review all of the evidence in the record, but it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.

<u>Tolbert v. Queens College</u>, 242 F.3d 58, 70 (2d Cir. 2001) (internal citations and quotation marks omitted).

A.  Good-Faith Efforts to Prevent Discrimination

"The imposition of punitive damages under both federal and local law is governed by the federal standard." Farias v. Instructional Sys., Inc., 259 F.3d 91, 102 (2d Cir. 2001). Punitive damages are appropriate where a defendant acted with malice or reckless indifference to a plaintiff's federally protected rights. 42 U.S.C. § 1981a(b)(1); Kolstad v. ADA, 527 U.S. 536, 529-30. "A 'positive element of conscious wrongdoing' is required for an award of punitive damages." Farias, 259 F.3d at 101 (quoting Kolstad, 527 U.S. at 538)). "[G]iving punitive damages protection to employers who make good-faith efforts to prevent discrimination in the workplace accomplishes Title VII's objective of motivating employers to detect and deter Title VII violations." Kolstad, 527 U.S. at 545-46 (internal citations and quotation marks omitted). Retaliatory conduct undertaken pursuant to advice that the conduct was lawful may not support a punitive damage award, Farias, 259 F.3d at 102 (punitive damages inappropriate where defendant acted pursuant to attorney-endorsed policy), particularly where such conduct was undertaken to protect a competing interest. Weissman v. Dawn Joy Fashions, Inc., 214 F.3d 224, 236 (2d Cir. 2000) (punitive damages inappropriate where defendant acted to protect itself against possible long-term absence of an employee); Greenbaum v. Handelsbanken, NY, 67 F. Supp. 2d 228, 236 (S.D.N.Y. 1999) (punitive damages appropriate where no competing legal interests interfered with defendant's ability to conform its actions to the law). However, seeking advice of counsel does not as a matter of law preclude a punitive damage award; indeed, such consultation may instead establish that a defendant knew about the legal consequences of its actions. See Greenbaum, 67 F. Supp. 2d at 236.

Here, there is no evidence of any competing interest that hampered Defendant's ability to protect Plaintiff's rights. See Greenbaum, 67 F. Supp. 2d at 236. However, there is

3

evidence that human resources representatives and counsel were involved in Defendant's decisions with respect to Plaintiff's employment. For example, in 2002, after Plaintiff first complained of discrimination with respect to her bonus compensation, the director of human resources consulted with counsel and conducted an internal investigation, from which she concluded that Defendant had not discriminated against Plaintiff. (Trial Tr. at 1130, 1644-46.) Human Resources and counsel were involved in Defendant's decision to terminate Plaintiff in June 2003, reinstate her in October 2003 and terminate her again in April 2004, and human resources representatives were in "very close discussions with [Plaintiff's supervisor] throughout the process." (See, e.g., Trial Tr. at 936, 945-47, 1160-62, 1753-64.)

This evidence of involvement by counsel and human resources, however, does not as a matter of law establish that Defendant tried in good faith to refrain from retaliation. See Parrish v. Sollecito, 280 F. Supp. 2d 145, 154 (S.D.N.Y. 2003). In awarding punitive damages, the jury, pursuant to the charge, determined that Defendant did not make good-faith efforts to enforce any anti-discrimination policies and procedures. Considering the evidence in the light most favorable to Plaintiff, this Court finds that it was reasonable for the jury to come to this conclusion. See Tolbert, 242 F.3d at 70.

B. Plaintiff's False Testimony

While courts have granted motions to dismiss where plaintiffs have engaged in "systematic and brazen perjury," see Scher v. NASD, 386 F. Supp. 2d 402, 409 (S.D.N.Y. 2005), this Court is aware of no cases—and Defendant has supplied none—eliminating a punitive damage award because a plaintiff gave some false testimony. Moreover, on a motion pursuant to Fed. R. Civ. P. 50(b), courts may not "pass on the credibility of the witnesses, or substitute [their] judgment for that of the jury," Tolbert, 242 F.3d at 70. Accordingly, even if, as Defendant

4

asserts, Plaintiff gave some false testimony on three minor issues, that is not a ground for this Court to vacate the punitive damage award.

II. New Trial/Remittitur

A new trial or remittitur pursuant to Fed. R. Civ. P. 59 is appropriate where the jury award is "so high as to shock the judicial conscience and constitute a denial of justice." Ismail v. Cohen, 899 F.2d 183, 186 (2d Cir. 1990). A court may grant a new trial even if there is substantial evidence in support of a jury's verdict, and need not weigh the evidence in the light most favorable to the non-movant. Song v. Ives Labs., Inc., 957 F.2d 1041, 1047 (2d Cir. 1992). When a court finds a verdict to be excessive, it may order a new trial, order a new trial limited to damages, or condition denial of a motion for a new trial on the plaintiff's accepting damages in a reduced amount. Zakre v. Norddeutsche Landesbank Girozentrale, 541 F. Supp. 2d 555, (S.D.N.Y. Feb. 7, 2008).

A. Compensatory Damages

To obtain emotional distress damages, a plaintiff must establish actual injury and the award must be "supported by competent evidence" in addition to a plaintiff's subjective testimony. Patrolmen's Benevolent Ass'n of N.Y., Inc. v. City of New York, 310 F.3d 43, 55 (2d Cir. 2002). Reduction of an award is appropriate where there is "sparse evidence with respect to the magnitude and duration of emotional injury or mental distress." Reiter v. Metro Transp. Auth. of N.Y., No. 01 Civ. 2762 (JGK), 2003 WL 22271223, at *9 (S.D.N.Y. Sept. 30, 2003). "Garden variety" emotional distress claims lacking extraordinary circumstances and without medical corroboration generally merit $30,000 to $125,000 awards. See Lynch v. Town of Southampton, 492 F. Supp. 2d 197, 207 (E.D.N.Y. 2007) (collecting cases and remitting

5

$500,000 compensatory damage award to $50,000.). Cases with evidence of debilitating and permanent alterations in lifestyle may merit larger awards. Rainone v. Potter, 388 F. Supp. 2d 120, 125 (E.D.N.Y. 2005) (citing Ramirez v. Off-Track Betting, 112 F.3d 38 (2d Cir. 1997) ($500,000 compensatory damage award appropriate where plaintiff's psychiatric disabilities resulting from discharge rendered him unemployable)); Reiter, 2003 WL 22271223, at *9.

Plaintiff's evidence of emotional distress consists of her testimony that she felt stressed (Trial Tr. at 234), crushed (Trial Tr. at 235), and shocked and devastated (Trial Tr. at 284). She also testified that she was subjected to an extreme level of public scrutiny (Trial Tr. at 268-69, 271) and that she suffered from headaches and developed hives and welts (Trial Tr. at 266). Plaintiff testified that "my life savings are gone. The costs of this lawsuit feel crushing to me. The costs are beyond anything I ever imagined." (Trial Tr. at 331.)

Plaintiff's distress largely resembles the "garden variety" emotional distress claims that courts have found to merit reduction. See Reiter, 2003 WL 22271223, at *11 (reducing compensatory damage award from $140,000 to $10,000 where plaintiff testified that he felt stressed, nervous, on edge and clammy); McIntosh v. Irving Trust Co., 887 F. Supp. 662, 669 (S.D.N.Y. 1995) (reducing compensatory damage award from $219,000 to $20,000 where plaintiff testified that he felt humiliated, interrogated, shocked, angry and embarrassed, and suffered weakness in his legs and stomach cramps). But see Osorio v. Source Enters., Inc., No. 05 Civ. 10029 (JSR), 2007 WL 683985 (S.D.N.Y. Mar. 2, 2007) (declining to allow any punitive damage award, but upholding $4 million compensatory damage award where plaintiff testified that she was depressed, anxious, and embarrassed in front of others). Moreover, in declining to award front pay, the jury found that Plaintiff's injuries were not permanent. See Rainone, 388 F. Supp. 2d at 125; Reiter, 2003 WL 22271223, at *9. However, this Court is also mindful that

6

Plaintiff was unlawfully terminated not once, but twice, and that the great cost of pursuing this action has been extremely stressful. Accordingly this Court remits the compensatory damage award to $300,000, which is at or above the upper range of reasonableness. If Plaintiff elects not to accept this amount, the Court will hold a new trial limited to the amount of compensatory damages due Plaintiff.

B. Punitive Damages

Courts consider three guideposts in reviewing a punitive damage award: (1) most importantly, the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 575 (1996).

Courts determine the reprehensibility of a defendant's conduct by considering whether: (1) the harm caused was physical as opposed to economic; (2) the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; (3) the target of the conduct had financial vulnerability; (4) the conduct involved repeated actions or was an isolated incident; and (5) the harm was the result of intentional malice, trickery, or deceit, or mere accident. State Farm Mut. Automobile Ins. Co. v. Campbell, 538 U.S. 408, 419 (2003).

Here, Defendant's conduct caused no physical harm and there was no threat to the safety of others. Plaintiff—who has no dependents, is well-educated, has significant experience in the industry, earned a substantial salary at WestLB and owns a Fifth Avenue apartment worth over $1 million (Trial Tr. at 62, 64, 67-70, 78, 131-32, 136, 382)—was not financially vulnerable. See Parrish, 280 F. Supp. 2d at 163 (noting plaintiff not deprived of food, shelter or

7

basic necessities not financially vulnerable). Indeed, the jury declined to award Plaintiff front-pay. With respect to the fourth factor, though Plaintiff presented some evidence that a female WestLB employee complained of discrimination and retaliation, Plaintiff did not establish any pattern of retaliation. Nevertheless, the jury found that Defendant had engaged in multiple instances of retaliation against Plaintiff herself, and Defendant does not challenge this finding. With respect to the last factor, as discussed above, Plaintiff arguably established that Defendant acted maliciously—that is with knowledge that it might be depriving her of her rights—when it retaliated against her. Thus, Defendant's conduct can be described as reprehensible, though it does not fall at the extreme end of the reprehensibility spectrum.

As to the second guidepost, there is no "simple mathematical formula" to determine whether a punitive damage award is constitutional. Exxon Shipping Co. v. Baker, --- S. Ct.---, No. 07-219, 2008 WL 2511219 (June 25, 2008). However, "few awards exceeding a single-digit ratio between punitive and compensatory damages . . . will satisfy due process; when compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." Exxon, 2008 WL 2511219. Without setting a bright line rule, the Supreme Court has noted that a $1,000,000 compensatory damage award is "substantial." State Farm Mut. Automobile Ins. Co. v. Campbell, 538 U.S. 408, 452 (2003). Here, the compensatory damage award was half that amount— $500,000—and the ratio of punitive to compensatory damages was 2.6 to 1.[1] Thus, while the second guidepost does not appear to require remittitur, it also does not preclude it.

The third guidepost requires this Court to consider civil penalties awarded in comparable cases. While the New York City Administrative Code allows Plaintiff to recover

punitive damages in excess of $300,000, see § 8-502(a), New York state prohibits them altogether, and Title VII caps them at $300,000, 42 U.S.C. § 1981a(b)(3); see also Funk v. F & K Supply Inc., 43 F. Supp. 2d 205, 25-26 (N.D.N.Y. 1999); accord Gonzalez v. Bratton, 147 F. Supp. 2d 180, 204 (S.D.N.Y. 2001). "The federal cap . . . provides guidance on what is considered an appropriate civil penalty of comparable misconduct." Thomas v. iStar Fin. Inc., 508 F. Supp. 2d 252, 263 (S.D.N.Y. 2007). Moreover, courts in this District generally have reduced awards in comparable cases. See, e.g., Thomas, 508 F. Supp. 2d at 263 (reducing $1.9 million award to $190,000); Watson v. E.S. Sutton, Inc., No. 02 Civ. 2739, 2005 WL 2170659, at * (S.D.N.Y. Sept. 6, 2005) (reducing a $2.5 million punitive damage award to $717,000, roughly half of the compensatory damage award); Lamberson v. Six W. Retail Acquisition, Inc., No. 98 Civ. 8053, 2002 WL 59424, at *7 (S.D.N.Y. Jan. 16, 2002) (ordering new trial unless plaintiff accepted reduction in punitive damage award from $125,000 to $30,000). Accordingly, the third guidepost counsels in favor of remittitur.

For the foregoing reasons, this Court finds that the punitive damage award should be reduced to $750,000. If Plaintiff elects not to accept this amount, the Court will hold a new trial limited to the amount of punitive damages due Plaintiff.

C. Bonus Awards

The record reflects that the highest bonus paid to a senior sales person at WestLB in 2003 was $244,000. (Cohen Aff. Ex. G: Def. Ex. IY.) In 2004, the only senior equities sales person at WestLB earned a $300,000 bonus, $100,000 of which constituted his guaranteed new hire bonus. (Cohen Aff. Ex. G; Trial Tr. 1372.) The jury awarded Plaintiff the maximum bonus awards available to WestLB employees. While the evidence does not establish that Plaintiff

---

[1] Because the Court remits compensatory damages to $300,000, the ratio is now 4.3 to 1.

necessarily would have merited such high bonuses, the amounts awarded are rooted in the evidence and do not "shock the judicial conscience."

III. Equitable Relief

Courts in this circuit have repeatedly emphasized the importance of equitable relief—preferably in the form of reinstatement—in employment cases. See, e.g., Reiter v. MYA New York City Trans. Auth., 457 F.3d 224, 230 (2d Cir. 2006). However, where a plaintiff has already been made whole, such relief is not warranted. See, e.g., Barbano v. Madison County, 922 F.2d 139, 146-47 (2d Cir. 1990).

Under Title VII front pay is an equitable remedy to be decided by the Court; however, under New York law, it is a legal remedy to be determined by the jury. Thomas, 508 F. Supp. 2d at 257-58. As was her right—and over Defendant's objection—Plaintiff insisted that the question of front pay be submitted to the jury. After hearing evidence of Plaintiff's mitigation efforts,[2] the jury declined to award any front pay. Having failed to persuade the jury, Plaintiff now wants this Court to exercise its equitable power to award front pay under Title VII.

However, this Court finds that Plaintiff has been made whole and, thus, neither reinstatement nor front pay is warranted. Plaintiff received $747,000 in back pay, as well as compensatory and punitive damage awards, and will receive pre- and post-judgment interest and attorneys' fees covering, at a minimum, her own substantial costs in pursuing this action. Barbano, 922 F.2d at 146-47 (no abuse of discretion in the trial court's determination that a

---

[2]After she was terminated by WestLB, Plaintiff networked with colleagues, clients and spoke with headhunters. (Trial Tr. at 287-88.) She testified that is how she found employment in the past. (Trial Tr. 75-79.) Plaintiff did not submit any employment applications for approximately two years. (Trial Tr. at 292-93, 1617.) In sum, she has interviewed for fewer than a dozen jobs.

10

prevailing gender discrimination plaintiff was made whole by an award of back pay, pre-judgment interest and attorneys' fees and denying front pay or reinstatement); Zakre, 541 F. Supp. 2d at 571 (declining to reinstate plaintiff because, inter alia, her "damages award is sufficient to fully compensate her"). This Court's conclusion that Plaintiff has been made whole is bolstered by the jury's reasonable decision not to award front pay. See McIntosh v. Irving Trust Co., 873 F.Supp. 872, 880 (S.D.N.Y. 1995). This Court finds no basis to disregard the jury's determination on front pay.

IV. Interest

Plaintiff seeks, and Defendant does not oppose, an award of pre-judgment interest on the lost wages award and post-judgment interest on the entire award. This Court grants Plaintiff's request. See Gierlinger v. Gleason, 160 F.3d 858, 873 (2d Cir. 1998) (the decision to award pre-judgment interest is left to the sound discretion of the court); 28 U.S.C. § 1961 (plaintiff is entitled to post-judgment interest on "any money judgment in a civil case recovered in a district court").

Where, as here, a judgment is based on violations of both federal and state law, courts in this circuit apply the federal interest rate set forth in 28 U.S.C. § 1961(a). See Thomas, 508 F. Supp. 2d at 264. 28 U.S.C. § 1961(a) sets the rate for pre-judgment interest at the average annual Treasury bill rate of interest between the dates of the adverse actions and the date of judgment. In order to properly compensate plaintiff, the appropriate methodology should be used in calculating the award. Courts in this district follow the method described in McIntosh, 873 F. Supp. at 884, to calculate this rate: "[f]irst, the award should be divided pro rata over the

---

(Trial Tr. 294-99, 324-35.)

appropriate time period[; s]econd, once the award is divided, the average annual United States treasury bill rate of interest referred to in 28 U.S.C. § 1961 will be applied[; and t]hird and finally, in order to guarantee complete compensation to the plaintiff, the interest will be compounded annually." See, e.g., Thomas, 508 F. Supp. 2d at 264 (quoting Robinson v. InsTrial Tr. Sys., Inc., 80 F. Supp. 2d 203, 208 (S.D.N.Y. 2000) (quoting, inter alia, McIntosh, 873 F. Supp. at 884))).

28 U.S.C. § 1961(a) sets the rate for post-judgment interest at the weekly average one-year constant maturity Treasury yield, as published by the Federal Reserve System for the calendar week preceeding the date of judgment.

## CONCLUSION

For the foregoing reasons it is ordered that:

(1) Defendant's motion for judgment as a matter of law is denied;

(2) Defendant's motion for a new trial on the bonus awards is denied;

(3) Defendant's motion for a new trial on the compensatory and punitive damage awards is granted unless Plaintiff elects to remit the awards to $300,000 and $750,000 respectively; Plaintiff shall serve and file her election within ten (10) days of the date of this Memorandum and Order;

(3) Plaintiff's motion to amend the judgment is granted; the damage awards are subject to pre- and/or post-judgment interest in the manner set forth in this Memorandum and Order; and

(4) Plaintiff's motion for equitable relief is denied.

If the Plaintiff elects remittitur, the parties are directed to submit proposed judgment in accord with this Memorandum and Order within seven (7) days of Plaintiff's election.

Dated: August 15, 2008
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of record:*

Kathleen Peratis, Esq.
Outten & Golden, LLP
3 Park Avenue, 29th Floor
New York, NY 10016
*Counsel for Plaintiff*

Joel Cohen, Esq.
McDermott, Will & Emery, LLP
340 Madison Avenue
New York, NY 10017
*Counsel for Defendant*